## JONES v. THOMPSON et al.

(Court of Civil Appeals of Texas. Texarkana. May 11, 1911. On Motion for Rehearing, June 15, 1911.)

1. LIMITATION OF ACTIONS (§ 127*) — COMMENCEMENT OF ACTION—PLEADING—AMENDMENT.

Before the statute of limitations had run upon the cause of action, a petition was filed seeking to recover a promissory note and cancel the assignment, whereby the holder claimed it, on the ground that the note was given as part payment of the consideration of a contract for the sale of land, which contract had never become operative, owing to the inability of the parties to agree on its terms. After the period of limitation had expired, an amended petition was filed seeking to recover the value of the note. In both petitions the wrongful detention was the basis of the cause of action. *Held*, that the amended petition was a continuance of the same action, and the right was not barred.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 543–547; Dec. Dig. § 127.*]

### On Motion for Rehearing.

2. VENDOR AND PURCHASER (§ 17*)—ASSENT—NECESSITY.

Parties entered into an oral contract for the sale of land with the agreement, that its terms should be reduced to writing, but they were unable to agree upon its terms. Finally the vendor submitted a contract to the purchaser, which the purchaser signed and returned. The vendor failed to sign this contract or express his assent. *Held*, that he could claim no benefits under it.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 21; Dec. Dig. § 17.*]

Appeal from District Court, Wichita County; A. H. Carrigan, Judge.

Action by J. T. Thompson against Morgan Jones and others. From a judgment for plaintiff, defendant Jones appeals. Affirmed.

D. T. Bomar and Flournoy, Smith & Storer, for appellant. Montgomery & Britain, for appellees.

HODGES, J. This suit was originally instituted by J. T. Thompson, the appellee, against Amelia Leigois, her husband, and Morgan Jones, the appellant. The purpose of the suit as against Leigois was to recover the amount of a promissory note executed by Amelia Leigois, formerly Amelia Tennison, on January 31, 1906, and to foreclose a vendor's lien upon a certain tract of land described in the petition, for which the note was given as a part of the purchase price. After alleging the execution and delivery of the note by the maker to one Williams and its subsequent transfer by Williams to Thompson, the plaintiff in the suit, the petition avers that by virtue of an understanding and agreement which it is claimed never became effective, or was void on account of not being in writing, the note had been transferred by plaintiff to Jones; that Jones was wrongfully retaining possession of the note and claiming to own it. The petition concludes with a prayer for the title and posses-

sion of the note as against Jones, and the cancellation of a written transfer which had theretofore been made to him, and for judgment against the other defendants for the amount of the note, with interest and attorneys fees, and a foreclosure of the vendor's lien upon the premises described. This petition was filed on the 18th day of September, 1908. On February 10, 1910, appellant filed an amended petition, in which the same parties are retained as defendants, but the relief sought is the value of the note against Jones upon allegations that he had converted it to his own use.

The defendant Jones answered by a general demurrer, special exceptions, and general denial. By way of special answer, he pleaded that on the 10th day of May, 1906, he owned a number of tracts of land situated in Baylor and Archer counties, aggregating something over 5,000 acres; that he entered into an agreement with the appellee by which he sold the latter all of the land referred to at $8 per acre, the terms being $500 to be paid in cash and $1,200 to be paid by the indorsement and delivery of the note for the conversion of which this suit was brought, the remainder of the purchase price to become due in 18 months after the 10th of May, 1906, and to bear interest at 7 per cent. per annum from the 10th day of November following; that said contract contained the further provision that the sale should be closed up within six months from the 10th of May, 1906, also, that the lands were of different character and value, ranging in price and value from $5 to $12 per acre; that it was distinctly agreed and understood between the parties that the transaction should evidence a sale of said lands as a whole, and not otherwise. It is also alleged that it was expressly understood that the $500 stipulated to be paid in cash by Thompson, and the note for $1,200 sued on in this cause, should be kept by Jones as a guaranty that all of said lands would be sold and paid for at the average price mentioned, and that those items were not to be taken into account in the settlement between the parties until all of the lands should be sold and payment made in accordance with the contract; that, when this was done, they should be accounted for; that it was also agreed that, if the plaintiff should fail to sell all the lands and to carry out his agreement, then the sum of $500 in cash and the note sued on should become forfeited to Jones by reason of such failure within the aforesaid six months from the date of the undertaking. The answer then alleges a failure on the part of the plaintiff in the suit to comply with the terms of the contract, and claims that a forfeiture of the note resulted. Appellant also pleaded that the cause of action was barred by the statute of limitation of two years. There were other defenses not necessary here to mention. The plaintiff filed a supplemental pe-

tition, in which he denied the facts set forth by the defendant Jones, and alleges, in substance, that no contract had ever been entered into between them that was susceptible of enforcement; that they had agreed to make a contract, but that none in fact had ever been made. The testimony shows that on the 10th day of May, 1906, Jones was the owner of the land referred to by him in his answer; that he and Thompson had some verbal negotiations by which it seems to have been agreed that Thompson should have the exclusive option to purchase the land from Jones at $8 per acre until the 1st of January following; that $2 of that amount was to be paid in cash as the land was sold; and that Jones was to be protected in some manner not then agreed upon in the deferred payments. It was also agreed between the parties that a written contract should subsequently be entered into expressing in detail all of the terms which had been discussed, and providing the method by which Jones should be protected in the deferred payments. It appears that Thompson immediately thereafter began efforts to sell the lands upon the assumption that he was to get them at $8 per acre. Written contracts were prepared by each party and transmitted to the other, but were rejected upon the contention that they were not in compliance with the original agreement. Some time in November following a written contract was prepared by Bomar, an attorney for Jones, and transmitted to Thompson for his signature. This was signed by Thompson in duplicate after changing a date, and by him returned to Jones. Jones acknowledged receipt of the contract, and stated that he had referred it to his attorney, who was authorized to examine it and sign his name thereto. Bomar, the attorney referred to, also informed Thompson by letter of the receipt of the contract, but said that he did not then have time to examine it and determine whether or not it was correct. For some reason, the contract was never signed or returned to Thompson.

The principal question here involved seems to be as to whether or not that written contract transmitted by Thompson to Jones had ever become effective as a binding agreement between the parties, the facts being undisputed that it was never signed by Jones or by any one for him. The court found as follows upon that issue:

"I find that in May, 1906, the defendant, Morgan Jones, owned and controlled about 10 surveys of land in Baylor and Archer counties, Tex., aggregating something over 5,000 acres of land. I find that in May, 1906, the plaintiff J. T. Thompson had a conversation with the defendant, Jones, for the purpose of selling said land; that the terms of said agreement were to be reduced to writing, but never were reduced to writing and agreed upon by the parties; that subsequent to said time when the plaintiff

and defendant, Jones, had negotiations in reference to the sale of said land, plaintiff sent defendant, Jones, the $1,200 note as described in plaintiff's petition, and agreed to pay $500 in cash, and said $500 and $1,200 note was to be held by defendant, Jones, as a forfeit in case the plaintiff should fail to carry out his part of the contract; that after several attempts were had to agree on the specific terms of a contract for the sale of said lands between plaintiff and defendant, Morgan Jones, to wit, on or about November 16, 1906, plaintiff Thompson executed the contract which appears to be dated on July 1, 1906, and sent the same to Morgan Jones for his signature and acceptance; that Morgan Jones never signed said contract of agreement, and never notified plaintiff that he had accepted the same; that plaintiff never paid the $500 to Morgan Jones as a part of said written contract, and I find that there was no final contract entered into and agreed upon by the parties. I further find that, plaintiff and defendant not being able to agree upon any final contract between themselves, that negotiations were discontinued between them, and that before the filing of this suit that the defendant, Morgan Jones, believing that he was entitled to the $1,200 note sued on, transferred and sold the same.

### "Conclusions of Law.

"That the plaintiff and defendant, Jones, never having finally consummated any contract, that defendant Jones is not entitled to retain the note sued on and that plaintiff is entitled to the value of the note sued on, which is shown to have been its face and accrued interest. I therefore rendered the judgment as shown in the record for plaintiff. I hold that the cause of action was not changed by the amended petition, and that, therefore, the statute of limitation did not apply."

The testimony bearing upon that issue consisted mainly of the written correspondence of the parties, covering a period of more than a year, and is quite voluminous. We adopt the findings of fact made by the court, and agree that the testimony was sufficient to justify the conclusion reached. No good purpose could be subserved by giving the testimony in detail.

[1] Appellant also insists that the testimony shows that the cause of action was barred by the statute of limitation of two years. It seems to be contended that the conversion should date from the 3d day of

138 S.W.—40

December, 1906. If the institution of the suit is to date from the filing of the amended original petition, then the bar was complete. Appellee contends, however, that the beginning of the suit should date from the filing of the original petition. It is apparent from what has been said with reference to that instrument that the purpose of the suit as originally filed was, so far as Jones was concerned, to recover the note and to cancel the assignment by which he claimed to hold it. In the amended petition the suit is against him to recover the value of the note. In both petitions the wrongful detention of the note is the basis of the cause of action. In the one the instrument itself is sought to be recovered, and in the other its value. We think the amended petition was a continuation of the same cause of action, and the right was not barred. Phœnix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707; Lee v. Boutwell, 44 Tex. 151.

The judgment of the court below is affirmed.

### On Motion for Rehearing.

In his motion for rehearing the appellant calls attention to two letters written during April, 1907, one by Thompson and the other by Bomar as the agent of Jones; and insists that these should be treated as sufficient to show the adoption of the written contract by virtue of which Jones now claims to hold the note in controversy. That contract provided that the options sold to Thompson were to expire January 1, 1907. These letters were written more than three months after that time. It can hardly be said that they should be looked to as constituting an adoption of a contract which by its own terms had ceased to be operative. Jones, or his agent, Bomar, at that time had possession of the contract.

[2] Had Jones then desired its adoption for the government of their future transactions, he could easily have made that manifest by affixing his signature and giving notice to Thompson. This he failed to do. His failure in the first instance to sign the contract was either intentional or due to an oversight. If intentional, then he is in no attitude to now claim the benefit of its terms. If due to an oversight, that excuse was no longer available after his attention was called to the failure by the correspondence to which he now refers. Instead of those letters furnishing evidence of the adoption of the contract, they tend to establish the contrary.

The motion is overruled.